Nov. Term,
1852.

LINDVILLE
v.
THE STATE.

LINDVILLE *v.* THE STATE.

The Courts of Common Pleas have jurisdiction, by the act establishing them, of felonies which are not punishable with death, where the party charged with the crime is in custody at the time, or where, before indictment found in another Court, he has voluntarily submitted to the jurisdiction of the Court of Common Pleas either by personal appearance or in writing.

After the act establishing Courts of Common Pleas took effect, but before the R. S. 1852 went into force, a complaint for a felony not punishable with death, containing the substantial requisites prescribed by the statute, was filed in the Court of Common Pleas; but the complaint was denominated in the body of it an *"*information.*"* *Held,* that the sufficiency of the complaint was to be determined by the act establishing the Court. *Held,* also, that the name given to the complaint did not change its legal effect.

A person charged with the commission of a crime should be allowed a reasonable time to prepare his defense.

*Tuesday,
February* 1,
1853.

ERROR to the *Jackson* Court of Common Pleas.

STUART, J.—This was a trial on a charge of felony without the intervention of a grand jury. The proceeding was had under the statute establishing the Court of Common Pleas and defining its jurisdiction. The affidavit preferring the charge contains the material allegations of a good indictment. No objection is taken to it in point of form or technical precision.

It appears from the record that *Lindville* was in custody. He was arraigned in the Common Pleas, and pleaded the general issue. Trial by jury and verdict of guilty. Motion for a continuance on an affidavit filed before trial, and also motions for a new trial and in arrest of judgment, severally overruled, and judgment on the verdict. *Lindville* now prosecutes his writ of error.

Three objections are taken to this proceeding:

1. That the Court of Common Pleas has no jurisdiction in cases of felony;

2. That the proceeding by information is one unknown to and unauthorized by the law;

3. That the Court erred in refusing to grant a continuance on the affidavit filed.

It may be observed generally that the act to establish

Courts of Common Pleas contains many incongruities

and repetitions. So do other important statutes. The chief cause of these discrepancies is, that the unity of design of most of our legislation is destroyed by amendments. The structure of the statute before us clearly evinces that such has been its history. Taking it as we find it, we must reconcile and give effect to its several provisions, if they can be reconciled and made operative. To this end it is proper to consider the reasons for its enactment.

The Common Pleas takes the place of the Probate Court, only with enlarged powers and jurisdiction. The legislature evidently intended it to be a Court of greater dignity and efficiency than that which it had supplanted. In addition to the probate business, a limited civil and criminal jurisdiction was conferred. It was supposed that, by this means, justice would be more speedily administered, the Circuit Court relieved from the pressure of the numerous cases cognizable in the new Court, and the delays incident to the semi-annual terms of the one obviated by the quarterly sessions of the other.

Both in civil and criminal cases delay and its consequences had become a great evil. Some Circuit Court dockets numbered from 300 to 500 cases. The time of that Court was chiefly occupied in the trial of petty offenders, while the important civil business was continued over from term to term at a ruinous expense to litigants. In this way the larger commercial points particularly suffered. Nor was the end for which the time of the Court was thus spent successfully attained. Offenders committed at the close of one term in default of bail, had to be kept in prison till the next term. When the six months' Court rolled round, the witnesses who, had the trial been brought on in a reasonable time, could have been easily procured, were scattered; a link in the evidence was gone; and an acquittal was the consequence. It would be difficult to express the dissatisfaction felt in some parts of the state towards a system thus seemingly devised to facilitate escape. That the county

should be at the expense of keeping the prisoner six months, at the expense perhaps of guarding the jail, the expense of a grand jury, the expense of a public trial, and, in most instances, under the appointment of the Court, the expenses of an attorney to defend the accused; and all this expensive machinery to effect almost inevitably the acquittal of the prisoner, however guilty; constituted altogether such a vicious, inefficient system of criminal jurisprudence as eminently needed remedial legislation.

The grand jury, whether justly or not, had impaired its standing in public confidence. Its alleged abuses led to the provision in the new constitution authorizing the legislature to modify or abolish the system. Accordingly, the grand jury was modified, depriving it of cognizance over misdemeanors, and, in certain contingencies, over felonies. To meet these emergencies—to administer justice in criminal cases more speedily, more efficiently, at less expense, and without the intervention of a grand jury, the Common Pleas was established.

Such being some of the mischiefs and such the remedy, it is our duty to give effect, if possible, to all the powers with which the legislature has clothed the new Court. This prepares the way to examine the objections in their order.

1. " The Common Pleas has no jurisdiction in cases of felony." To sustain this objection the 14th and 16th sections of the act under consideration are referred to. Had the jurisdiction conferred stopped with these sections, the objection would seem to be well taken. The intention to exclude felonies would scarcely admit of doubt. That such was the original purpose of the framers of the bill is perhaps historically true. The disjointed connection of the context favors that supposition. The 17th and 18th sections seem like hasty amendments. The 17th section expressly confers jurisdiction in certain specified cases, in these words, viz.: 1st. " Any person charged with a felony who is in custody at the time, and," 2d, " any one charged with a felony who, before in-

dictment found by a grand jury in any other Court, voluntarily, either by personal appearance or in writing, submits to the jurisdiction," &c.

Thus stand these sections considered separately. It is necessary to consider them collectively, in order that the true intent of the legislature may be deduced.

Regarded thus, how are they to be reconciled? Simply in this way: The 14th section was intended to confer jurisdiction over misdemeanors. This class of offenses is the subject-matter of the section. The word *felony*, as there used, and as explained in the context, is not in exclusion of that class of offenses altogether, but only in suspension, so far as that section is concerned, of any provision in relation to felony. It is as though the lawgivers had said, we will reserve the qualified jurisdiction which we mean to confer on the new Court over felony for a separate section. Accordingly, the subject-matter of the 17th section is felony. Under the specified contingencies, the party " *shall* be put on trial in the Common Pleas,"—"the Court *shall* appoint an early day for trial," &c. This is a language already too clear for comment.

So with the 16th section. It may be paraphrased thus: If, in the progress of a trial, the evidence discloses such a felony as treason or murder, further proceedings shall be stayed, &c. By this construction, no violence is done to language. The several parts fall in with each other, not very logically it is true, yet with sufficient unity to indicate the legislative intention.

It remains to inquire, under the first objection, how *Lindville* came into the Court that tried him? It appears from the record that he had been committed after a preliminary examination, probably for want of bail. At all events, he was " charged with a felony;" he was "in custody at the time;" the crime charged was not "punishable with death." He was thus within the very terms of the statute. He was also within the mischief, if it may be so called, to which we have already alluded. His was a fitting case to illustrate the remedy which the Common Pleas was established to supply, namely, to save public

expense, to secure witnesses while they are yet to be had and while the transactions were yet fresh in their memories; and, in the spirit of the new constitution, to administer justice "speedily and without delay." We therefore conclude that the objection to the jurisdiction is not well taken.

The second objection is, that "the proceeding by information is one unknown to and unauthorized by the law." The R. S. of 1852, which provide for informations, were not then published. The case must be governed by the statute in force at the time the alleged crime was committed. The act in relation to Common Pleas was published "by authority" in pamphlet form in *October*, 1852. The crime is alleged to have been committed in *January*, 1853. Under that act the case is to be decided. There is nothing in it about "informations," not even the word itself. By the 15th section "all criminal proceedings may be commenced in said Court by filing with the clerk a written charge, verified by affidavit," &c. By the 17th and 18th sections this mode of procedure is extended to felonies, and without the intervention of a grand jury. In one of these sections, the accusation is called a "complaint;" in the other, a "charge or complaint." The books define "information" to be a "charge, accusation, or complaint." It thus seems wholly immaterial which term is adopted. To change the name cannot change the legal effect. If the complaint filed be a substantial compliance with the statute which governs the case, it is sufficient.

The act itself gives the rule of construction. Section 19 provides that "in all criminal cases, the charge," &c., "shall be sufficient," &c., "if it be certain in its allegations to a common intent."

The Court are of opinion that the written "charge or complaint" contemplated by the statute is in this case well described as an information.

It is proper to add that the paper filed by the prosecuting attorney should be rejected as a nullity. There was no law at the time to authorize the filing of such an instru-

ment. The charge cannot be aided by the allegations of a separate paper, not sworn to and unknown to the law under which the trial was had. The word "information," in the record before us, must therefore be taken to mean the affidavit containing the charge, not the unauthorized paper filed by the prosecutor.

The third objection is well taken. The affidavit for a continuance is made part of the record by a bill of exceptions, and brings *Lindville* within the rule laid down in *Spence* v. *The State*, 8 Blackf. 281, and *Gross* v. *The State*, *May* term, 1850 (1). Persons charged with crime should be allowed a reasonable time to prepare their defense. The charge even before the magistrate, had, in this instance, been recently made. It is to be presumed that *Lindville* was in custody during the five days that intervened before his trial. The facts disclosed in his affidavit for a continuance, if true, affected materially the credibility of the witness. No great hardship could have resulted to the state, for it was in the power of the Court to appoint an early day for trial, either in term or in vacation. On this statutory provision the Court should have acted, and granted the defendant a reasonable time to prepare for trial.

*Per Curiam.*—The judgment is reversed. Cause remanded, &c.

*W. T. Otto* and *D. H. Long*, for the plaintiff.

*F. Emerson*, for the state.

(1) 2 Carter's Ind. R. 135.